**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Erickson Family Partnership LLLP,<br><br>Plaintiff,<br><br>v.<br><br>Transamerica Life Insurance Company,<br><br>Defendant. | No. CV-18-04566-PHX-DWL<br><br>**ORDER** |

**INTRODUCTION**

Pending before the Court is Defendant Transamerica Life Insurance Company's ("Transamerica") motion to dismiss Plaintiff James Erickson Family Partnership LLLP's ("Erickson") first amended complaint. (Doc. 15.) For the following reasons, the Court grants in part and denies in part Transamerica's motion.

**BACKGROUND**

On September 4, 2018, Erickson commenced this action by filing a complaint in Maricopa County Superior Court. Erickson never served this version of the complaint.

On November 15, 2018, Erickson filed an amended complaint in Maricopa County Superior Court and soon thereafter served Transamerica with the amended complaint.

On December 10, 2018, Transamerica filed a notice of removal in this Court. (Doc. 7.)[1]

---

[1] Transamerica initially filed its notice of removal at Doc. 1 but inadvertently attached the incorrect state-court documents. Transamerica resubmitted its notice of removal at Doc. 7, attaching the correct documents.

In a nutshell, the amended complaint (Doc. 7-6) alleges that Erickson purchased a $1 million life insurance policy from Transamerica in July 2006 to insure the life of James Erickson. (*Id.* ¶ 18.)[2] The complaint further alleges that Transamerica provided various materials, including a "prospectus," "annual illustrations," "pricing models," "accumulated balance projections," and "annualized premium outlay projections," during the marketing process in an attempt to induce Erickson to purchase the policy. (*Id.* ¶¶ 19, 20, 43.) These materials, the complaint alleges, suggested there wouldn't be any "exorbitant rate increases" or "drastic premium increases" in the future. (*Id.* ¶¶ 33, 35.) The complaint further alleges that Transamerica "had no actuarial data" and "no reasonably reliable underwriting criteria" on which to base these representations. (*Id.* ¶¶ 22, 40.) The complaint alleges that, although the annual premium remained relatively constant between 2006 and 2011, hovering between $61,392 and $65,976, "in August of 2017 the annualized premium increased to $208,956." (*Id.* ¶¶ 27-30.) The complaint also alleges that "Erickson made all the premiums payments as of the date of the filing of this complaint." (*Id.* ¶ 53.) Based on these allegations, Erickson asserts the following state-law claims: (1) violation of the Arizona Consumer Fraud Act ("ACFA"), (2) negligent misrepresentation, and (3) breach of contract.

**LEGAL STANDARD**

I. Rule 12(b)(6)

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the

---

[2] Erickson refers to this policy in two paragraphs as an "FL" policy and defines this type of policy. (*Id.* ¶¶ 6, 7.) Yet throughout the rest of the amended complaint, Erickson refers to the policy as an "AL" policy without ever defining that type of policy.

light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II. Rule 9(b)

Transamerica asserts, and Erickson does not seem to dispute,[3] that claims under the ACFA and for negligent misrepresentation are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See, e.g.*, *In re Banner Health Data Breach Litig.*, 2017 WL 6763548, *6 (D. Ariz. 2017) ("Claims arising under the ACFA pertain to fraud and are thus subject to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure."); *Estrada v. Capella Univ., Inc.*, 2018 WL 1428155, *2 (D. Ariz. 2018) ("Claims for negligent misrepresentation must meet the particularity requirements of Rule 9(b).") (citation and internal quotation marks omitted). *See also Sweeney v. Darricarrere*, 2009 WL 2132696, *12 n.109 (D. Ariz. 2009) ("Although the Ninth Circuit has suggested that negligent misrepresentation may be a non-fraudulent averment, [m]ost district courts within the Ninth Circuit have held that a [negligent misrepresentation claim is subject to the] heightened pleading requirements of Rule 9(b).") (citations and internal quotation marks omitted).

Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted); *see also Schreiber Distrib. Co. v. Serv-Well Furniture*

---
[3] Although Erickson asserts that "Fed. R. Civ. P. 8(a) does not demand explicit detail" (Doc 19 at 4), it does not address Transamerica's argument concerning the applicability of Rule 9(b) and nowhere contends that Rule 9(b) is inapplicable.

- 3 -

*Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (noting that under Rule 9(b), the plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"). "[T]he circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations and internal quotation marks omitted). Importantly, however, "[a] plaintiff in a fraud-by-omission suit faces a slightly more relaxed burden, due to the fraud-by-omission plaintiff's inherent inability to specify the time, place, and specific content of an omission in quite as precise a manner." *In re Banner Health Data Breach Litig.*, 2017 WL 6763548 at *7 (citations omitted).

III. <u>Evidence Outside the Pleadings</u>

Ordinarily, if a district court considers evidence outside the pleadings in ruling on a motion to dismiss, it must convert the motion into a motion for summary judgment and give the nonmovant an opportunity to respond. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). A district court may, however, consider "[c]ertain written instruments attached to pleadings" in ruling on a motion to dismiss. *Id.* at 908. Additionally, "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* The plaintiff need "not explicitly allege the contents of that document in the complaint" for the court to consider it, as long as the "plaintiff's claim depends on the contents of [the] document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). "[T]he district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

Transamerica argues the Court should consider three documents not attached to the amended complaint when ruling on its motion to dismiss: (1) the insurance policy between

Erickson and Transamerica (Doc. 15-2), (2) a sale illustration (Doc. 15-3), and (3) a 2017 illustration (Doc. 15-4). (Doc. 15 at 8-9.) The Court agrees with respect to the first two documents because both are explicitly referenced in the amended complaint and Erickson did not dispute their authenticity. *Ritchie*, 342 F.3d at 908 ("The doctrine of incorporation by reference may apply, for example, when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan . . . ."). The complaint, however, makes no reference to the 2017 illustration. Moreover, based on the allegations in the complaint, it is not clear this document forms the basis for any of Erickson's claims. At bottom, Erickson is arguing it was defrauded by certain documents (including the sale illustration) Transamerica gave it in 2006, when it was deciding whether to purchase the policy. Thus, although the 2017 illustration may end up being a key document in this case—Transamerica argues that Erickson misinterpreted the document when deciding how much money to remit in 2017 as a premium payment, a theory that, if true, may undermine Erickson's claims in the long run—it is not properly before the Court at the motion-to-dismiss stage.

The same fate befalls the declaration that Erickson filed as an exhibit to its response to the motion to dismiss. (Doc. 19-1.) This document, which contains factual representations about when certain premium payments were made and in what amounts, must be ignored at the current stage. *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015) ("Courts regularly decline to consider declarations and exhibits submitted in . . . opposition to a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice.").

**ANALYSIS**

I. ACFA

Transamerica moves to dismiss Erickson's ACFA claim on three grounds: (1) "the 'exorbitant' increase Plaintiff challenges . . . never occurred"; (2) the claim "do[es] not meet the pleading requirements under Rule 9(b)"; and (3) the claim is "time-barred." (Doc. 15 at 9-12.)

A.  **Argument 1: The Premium Increase Never Occurred**

Transamerica relies on the 2017 illustration (Doc. 15-4) to argue the "exorbitant" premium increase never occurred. But, as noted, the Court can't consider the 2017 illustration because Erickson didn't refer to this document in its amended complaint and the document doesn't form the basis of any of Erickson's claims. Thus, the Court must accept as true Erickson's allegation that "in August of 2017 the annualized premium increased to $208,956" (Doc. 7-6 ¶ 30) and cannot dismiss the ACFA claim on the ground that the "exorbitant" premium increase never actually occurred.

With that said, the Court will note that Erickson's representations on this issue are not a model of clarity. Although the amended complaint alleges that the "annualized premium" increased to $208,956 in August 2017 and that Erickson had "made all the premiums payments" by the time the amended complaint was filed in November 2018 (Doc. 7-6 ¶¶ 30, 53), the amended complaint doesn't actually allege that Erickson made a $208,956 premium payment in 2017—the juxtaposition of paragraphs 30 and 53 simply raises the inference such a payment was made. Also, in response to Transamerica's very specific claim that Erickson didn't make a large premium payment in 2017 (Doc. 15 at 7-8), Erickson merely argues that "even if Transamerica were correct, the issue is not ripe at this stage." (Doc. 19 at 2-3.) Although Erickson is correct about the law, it is unclear to the Court why Erickson is playing coy about this seemingly straightforward issue.[4] The timing and amount of the payment may end up being important for statute-of-limitations purposes and other reasons, and Erickson would be well served to included more specific allegations on this issue when it submits the next iteration of its complaint.

---

[4] The declaration Erickson submitted in response to the motion to dismiss, although not properly before the Court, is similarly ambiguous. It states that, "[a]ccording to the accounting, . . . [t]he policy premium has increased by a multiple of 3.33 times from $61,668 in 2007 . . . to $213,324 in 2017" and that "[t]he Family Partnership made the payments including the increased payments relying on the annual illustrations." (Doc. 19-1 ¶¶ 7-8.) Again, although the juxtaposition of these two paragraphs creates the inference that Erickson remitted more than $200,000 to Transamerica in 2017 as a premium payment, the declaration doesn't actually say this. Also, it doesn't identify the specific date on which the payment was made and refers to an amount ($213,324) that is different from the figure stated in the amended complaint ($208,956).

B. **Argument 2: The ACFA Claim Was Not Sufficiently Pleaded**

Under the ACFA, it is unlawful for any person to use or employ "any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." A.R.S. § 44-1522(A). The elements of an ACFA claim are "(1) a false promise or misrepresentation made in connection with the sale or advertisement of 'merchandise,' and (2) consequent and proximate injury resulting from the misrepresentation." *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 953 (Ariz. 2016).

Erickson has not satisfied the pleading requirements of Rule 9(b) with respect to its ACFA claim. Although Erickson claims that "[t]he Amended Complaint cites with particularity to the false and misleading projections that were both used to entice Erickson to buy and then also to keep the policy" (Doc. 19 at 7), this is simply not true. The complaint leaves Transamerica and the Court guessing as to the what, when, where, and how of the misconduct alleged.

As an initial matter, Erickson does not clearly allege what particular materials were misleading. The amended complaint vaguely refers to "annual updates" (Doc. 7-6 ¶ 21), a "prospectus" (*id.* ¶¶ 20, 22, 46), "annual illustrations" (*id.* ¶ 20), "annualized illustrations" (*id.* ¶ 22), "pricing models and the accumulated balance value projections" (*id.* ¶ 43), "annualized outlay projections" (*id.*), "unsupported projections and initial illustrations" (*id.* ¶ 44), "unsupported illustrations" (*id.* ¶ 45), and "marketing documents" (*id.* ¶ 49). And in response to the motion to dismiss, Erickson even seems to be arguing that the insurance policy itself was misleading. (Doc. 19 at 7.) It is not clear whether these are all the same or different materials (and if they are different materials, whether all are misleading), particularly given that Erickson did not provide any allegations regarding when or where Transamerica made its misrepresentations.

Moreover, Erickson fails to allege what exactly was misleading about the various materials. For example, describing the "annual updates" as "misleading" because they

were not "accurate illustrations" is far too conclusory—Erickson does not allege how exactly these "annual updates" were inaccurate or what about them was misleading. (Doc. 7-6 ¶ 21.) Erickson also alleges that "Transamerica represented and/or advertised the insurance policy in a way that caused Plaintiffs [sic] to reasonably believe . . . that change would not be so exorbitant to become unsustainable." (*Id.* ¶ 50.) But Erickson fails to allege *how* Transamerica "represented and/or advertised" the policy so as invoke this belief. (*See also id.* ¶ 57 [alleging violation based on "the conduct of Transamerica, in leading Erickson to believe it would be able to sustain reasonable premium payments and that its illustrations were accurate"].) Because these allegations are so vague, they give Transamerica insufficient notice of the particular misconduct Erickson is alleging.

Finally, to the extent Erickson is alleging an ACFA violation based on omissions, the amended complaint is inadequate even under Rule 9(b)'s relaxed standard for a fraud-by-omission claims. It is not clear what information Erickson is alleging Transamerica omitted, what materials contained the omissions, and how any particular omissions were misleading.

Accordingly, the Court must dismiss Erickson's ACFA claim for failure to satisfy the Rule 9(b) pleading requirements.

C. **Argument 3: The ACFA Claim Is Time-Barred**

Because the Court dismisses the ACFA claim on other grounds, it need not address, at this juncture, whether this claim is time-barred. That said, it would behoove Erickson to include, in the next iteration of its complaint, more specific allegations about when the 2017 premium payment was remitted and in what amount. Transamerica has credibly argued in its motion to dismiss that, because ACFA claims are subject to a one-year statute of limitations and Erickson filed the first version of its complaint on September 4, 2018, the only way the ACFA claim could be timely is if Erickson made the 2017 premium payment on or after September 4, 2017. (Doc. 15 at 10-11.)

…

…

II. <u>Misrepresentation</u>

Transamerica moves to dismiss Erickson's misrepresentation claim on two of the same grounds as the ACFA claim: (1) there was no large premium increase and (2) this claim also fails to meet the Rule 9(b) pleading requirements. (Doc. 15 at 12-13.)

A. **Argument 1: The Premium Increase Never Occurred**

Again, as noted, the Court cannot consider the 2017 illustration. And because the Court must accept Erickson's allegation that "in August of 2017 the annualized premium increased to $208,956" (Doc. 7-6 ¶ 30), the Court cannot dismiss the misrepresentation claim on the ground that the "exorbitant" premium increase never actually occurred.

B. **Argument 2: The Misrepresentation Claim Was Not Sufficiently Pleaded**

Arizona recognizes the tort of negligent misrepresentation as defined in Restatement (Second) of Torts § 552(1) (1977), which provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Haisch v. Allstate Ins. Co.*, 5 P.3d 940, 944 (Ariz. Ct. App. 2000). "The elements of negligent misrepresentation are: (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage." *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 n.7 (Ariz. Ct. App. 2014).

As with the ACFA claim, Erickson's misrepresentation claim fails under Rule 9(b)—Erickson does not identify the particular materials that were misleading or false or explain what exactly was misleading or false about the various materials.

III. Breach of Contract

Transamerica moves to dismiss the breach of contract claim on one of the same grounds on which it moved to dismiss the other claims: there was no premium increase. (Doc. 15 at 13.)

But, again, as noted, the Court cannot consider the 2017 illustration and therefore must accept Erickson's allegation that "in August of 2017 the annualized premium increased to $208,956." (Doc. 7-6 ¶ 30.) Because this was the only ground on which Transamerica moved to dismiss the contract claim, the Court declines to dismiss it.

Accordingly, **IT IS ORDERED THAT**:

1. Transamerica's motion to dismiss (Doc. 15) is **granted in part** and **denied in part**;
2. Erickson's ACFA and misrepresentation claims are **dismissed without prejudice**;
3. Erickson shall have until **May 3, 2019** to file a second amended complaint in accordance with this order and the local and federal rules.

Dated this 19th day of April, 2019.

Dominic W. Lanza
United States District Judge