**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Erickson Family Partnership LLLP, <br> Plaintiff, <br> v. <br> Transamerica Life Insurance Company, <br> Defendant. | No. CV-18-04566-PHX-DWL <br><br> **ORDER** |

## INTRODUCTION

Pending before the Court is Defendant Transamerica Life Insurance Company's ("Transamerica") motion to dismiss Plaintiff James Erickson Family Partnership LLLP's ("Erickson") second amended complaint ("SAC"). (Doc. 24.) For the following reasons, the Court grants in part and denies in part Transamerica's motion.

## BACKGROUND

I. Procedural History

On September 4, 2018, Erickson commenced this action by filing a complaint in Maricopa County Superior Court. (Doc. 7 ¶ 2.) Erickson never served this version of the complaint. (*Id.*)

On November 15, 2018, Erickson filed an amended complaint in Maricopa County Superior Court and soon thereafter served Transamerica with the amended complaint. (*Id.*; Doc. 7-6.) The amended complaint asserted three state-law claims: (1) violation of the Arizona Consumer Fraud Act ("ACFA"), (2) negligent misrepresentation, and (3) breach

of contract.

On December 10, 2018, Transamerica filed a notice of removal in this Court. (Doc. 7.)[1]

On January 16, 2019, Transamerica filed a motion to dismiss the amended complaint. (Doc. 15.)

On April 19, 2019, the Court granted in part and denied in part the motion, dismissing without prejudice Erickson's ACFA and negligent misrepresentation claims. (Doc. 21.) The Court found that "Erickson ha[d] not satisfied the pleading requirements of Rule 9(b) with respect to its ACFA claim" because "[t]he complaint leaves Transamerica and the Court guessing as to the what, when, where, and how of the misconduct alleged." (*Id.* at 7.) The Court further found that "[a]s with the ACFA claim, Erickson's misrepresentation claim fails under Rule 9(b)—Erickson does not identify the particular materials that were misleading or false or explain what exactly was misleading or false about the various materials." (*Id.* at 9.)

On May 2, 2019, Erickson filed the SAC. (Doc. 23.) The SAC asserts the same three state-law claims and adds claims for breach of the implied duty of good faith and fair dealing and rescission.

On May 16, 2019, Transamerica moved to dismiss the SAC. (Doc. 24.)

II. Allegations

In a nutshell, the SAC alleges that Erickson purchased a $1 million life insurance policy from Transamerica in July 2006 to insure the life of James Erickson. (Doc. 23 ¶¶ 1-3, 17; Doc. 23-1.) The SAC generally alleges that Transamerica made various false and misleading representations and omissions in connection with advertising the policy and in the policy itself, both before Erickson purchased the policy and during the life of the policy. The SAC contains allegations relating to several materials provided to Erickson by Transamerica, including "annual illustrations" (Doc. 23 ¶¶ 23-24), "annual updates" (*id.*

---

[1] Transamerica initially filed its notice of removal at Doc. 1 but inadvertently attached the incorrect state-court documents. Transamerica resubmitted its notice of removal at Doc. 7, attaching the correct documents.

- 2 -

¶ 25), "annualized illustrations" (*id.* ¶¶ 27, 29), "policy illustrations" (*id.* ¶¶ 31,43-45), an "initial policy illustration" (*id.* ¶ 38), "pricing models" (*id.* ¶ 71), "accumulated balance value projections" (*id.*), "annualized premium outlay projections" (*id.*), a "prospectus" (*id.* ¶ 74), and "prospective and in force illustrations" (*id.* ¶ 106). More specifically, the SAC alleges that Erickson relied on the 2006 policy illustration in purchasing the policy and that this illustration was misleading because it failed to indicate the illustrated premiums were "unsustainable" and would ultimately be "exorbitant[ly]" increased. (*Id.* ¶¶ 39, 90, 95, 101.) The SAC further alleges that annualized premiums remained around $62,000 from 2006 at least until April 2014 and then increased to $208,956 in August 2017. (*Id.* ¶¶ 46-50.) Although the SAC does not allege whether Erickson made the $208,956 premium payment, it does allege that Erickson paid an increased monthly premium of $16,000 in November 2018 and has made this same payment monthly thereafter. (*Id.* ¶¶ 53-54.)

## LEGAL STANDARDS

I. <u>Rule 12(b)(6)</u>

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065

(9th Cir. 2015) (citation omitted).

II.     Rule 9(b)

Transamerica asserts, and Erickson does not seem to dispute, that claims under the ACFA and for negligent misrepresentation are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See, e.g.*, *In re Banner Health Data Breach Litig.*, 2017 WL 6763548, *6 (D. Ariz. 2017) ("Claims arising under the ACFA pertain to fraud and are thus subject to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure."); *Estrada v. Capella Univ., Inc.*, 2018 WL 1428155, *2 (D. Ariz. 2018) ("Claims for negligent misrepresentation must meet the particularity requirements of Rule 9(b).") (citation and internal quotation marks omitted). *See also Sweeney v. Darricarrere*, 2009 WL 2132696, *12 n.109 (D. Ariz. 2009) ("Although the Ninth Circuit has suggested that negligent misrepresentation may be a non-fraudulent averment, [m]ost district courts within the Ninth Circuit have held that a [negligent misrepresentation claim is subject to the] heightened pleading requirements of Rule 9(b).") (citations and internal quotation marks omitted).

Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted); *see also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (noting that under Rule 9(b), the plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"). "[T]he circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations and internal quotation marks omitted). Importantly, however, "[a] plaintiff

- 4 -

in a fraud-by-omission suit faces a slightly more relaxed burden, due to the fraud-by-omission plaintiff's inherent inability to specify the time, place, and specific content of an omission in quite as precise a manner." *In re Banner Health Data Breach Litig.*, 2017 WL 6763548 at *7 (citations omitted).

III. Evidence Outside the Pleadings

Ordinarily, if a district court considers evidence outside the pleadings in ruling on a motion to dismiss, it must convert the motion into a motion for summary judgment and give the nonmovant an opportunity to respond. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). A district court may, however, consider "[c]ertain written instruments attached to pleadings" in ruling on a motion to dismiss. *Id.* at 908. Additionally, "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* The plaintiff need "not explicitly allege the contents of that document in the complaint" for the court to consider it, as long as the "plaintiff's claim depends on the contents of [the] document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). "[T]he district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

A. **Erickson's Exhibits**

Erickson attached twelve exhibits to its SAC. The Court may consider these exhibits in ruling on the motion to dismiss.

B. **Transamerica's Exhibits**

Transamerica argues the Court should consider two exhibits it attached to its motion to dismiss. Transamerica also attached a declaration of a Transamerica "LifePro Customer Care Supervisor" authenticating the two exhibits. (Doc. 24-1.) Exhibit A (Doc. 24-2) is a "complete version" of the sale illustration Erickson attached as Exhibit 2 (Doc. 23-2) to the SAC (Doc. 24 at 6 n.1). Exhibit B (Doc. 24-3) seems to be a complete version of the

annual statement Erickson attached as Exhibit 9 (Doc. 23-9) to the SAC (Doc. 24 at 9). Because Erickson does not dispute the authenticity of the two exhibits, and they appear to be what Transamerica claims they are—more complete versions of documents Erickson attached to the SAC—the Court may consider Transamerica's exhibits in ruling on the motion.

**ANALYSIS**

I. <u>ACFA</u>

Transamerica moves to dismiss the ACFA claim on four grounds: (1) "[Erickson] expressly sues only for conduct beginning in 2015"; (2) "the alleged increase never happened"; (3) the claim "is time-barred"; and (4) the claim "was not pleaded with sufficient particularity to satisfy Rule 9(b)." (Doc. 24 at 12-15.)

  A. **Argument 1: Erickson Sues Only For Conduct Beginning In 2015**

The SAC contains a footnote stating: "Plaintiff make[s] this historical reference only to illustrate Transamerica's current motivation for the COI increase. To be abundantly clear, Plaintiff in this action alleges no claim premised on conduct prior to the sale of the Policy; Plaintiff's claims are instead exclusively premised on Transamerica's action in imposing COI increases beginning in August 2015." (Doc. 23 ¶ 82 n.1.)

Transamerica argues that, because Erickson "is not suing on any pre-August 2015 conduct," Erickson must "ha[ve] abandoned its fraud claim based on conduct that allegedly induced the August 2006 purchase of the Policy, and the claim should be dismissed." (Doc. 24 at 12.)

In response to Transamerica's motion, Erickson filed a notice of errata, explaining that it "mistakenly added footnote '1' the content of which does not pertain to this matter" and, thus, the "footnote should be omitted in its entirety from" the SAC. (Doc. 25 at 1-2.) The notice of errata further indicates that Erickson's "counsel was having problems saving the document during the finalization process," "the footnote was inadvertently left in the final draft," and "[t]he text of the footnote is contradicted by the [SAC]." (*Id.* at 1.) Transamerica repeats these contentions in its response to the motion. (Doc. 26 at 3-4.)

As an initial matter, the Court notes that a notice of errata is not a proper way to amend a complaint. Nonetheless, despite the footnote, it is clear from the rest of the SAC that Erickson's claims are based on conduct occurring before August 2015. Thus, the Court will not dismiss any claims under the theory that they are foreclosed by footnote one in the SAC. Should Erickson decide to file a third amended complaint, however, this footnote must be removed.

B.     **Argument 2: The Premium Increase Never Occurred**

Transamerica next argues the ACFA claim should be dismissed because "[t]he crux of [Erickson's] claim is that [Erickson] knew its premiums would increase each year, but not as much as they ended up increasing in August 2017" and "the 'exorbitant' increase Plaintiff challenges—allegedly raising the annual premiums to $208,956 in 2017—never occurred." (Doc. 24 at 12-13.)

Erickson's ACFA claim is premised on its allegation that the "2006 policy illustration" was misleading. (Doc. 23 ¶ 90; Doc. 23-2.) In connection with that allegation, the SAC alleges that this policy illustration "showed that as long as the premium payment stayed constant the policy would accumulate both cash value and accumulated value over the life of the policy" and "state[d] that the policy w[ould] accrue both policy value and accumulation value if the interest rate is at the minimum of 3% and the policy premiums stay constant for ten years, [but] [t]he policy premiums as offered are misleading because the amounts became unsustainable based on the premiums stated at the time of the offer." (*Id.* ¶¶ 38-39; Doc. 23-2.) In essence, the SAC seems to be alleging the 2006 policy illustration was misleading because it suggested the premiums would stay constant at the illustrated amounts during the life of the policy.

Transamerica correctly notes that, although the SAC alleges that the annualized premium increased to $208,956 in August 2017 (Doc. 23 ¶ 50), the SAC nowhere alleges that Erickson actually made that $208,956 payment. However, the SAC does allege that Erickson was forced to increase its monthly premium payment from $5,331 to $16,000 in November 2018 and that Erickson continued making that same monthly premium payment

- 7 -

every month thereafter. (*Id.* ¶¶ 49, 53-54.) Thus, taking that allegation as true, there was indeed a large premium increase. Accordingly, the Court will not dismiss the ACFA claim on the ground that a premium increase never happened.

        C.     **Argument 3: The ACFA Claim Is Time-Barred**

An ACFA claim is subject to a one-year statute of limitations. A.R.S. § 12-541(5) (establishing one-year statute of limitations for any "liability created by statute, other than a penalty or forfeiture"); *Murry v. W. Am. Mortg. Co.*, 604 P.2d 651, 654 (Ariz. Ct. App. 1979) ("[A]n action commenced [under the ACFA] must be brought within one year as [§] 12-541[] requires."). "The limitations period begins to run when the consumer discovers or with reasonable diligence should have discovered both the 'who' and the 'what' of her claim." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 826 (D. Ariz. 2016). "[A] plaintiff's allegations about the date of discovery must be accepted as true at the 12(b)(6) stage, and a claim should not be dismissed as untimely unless the running of the statute of limitations is 'apparent on the face of the complaint.'" *Id.* (citation omitted).

Erickson's ACFA claim is premised on its allegation that "Transamerica represented and/or advertised the insurance policy, through the 2006 policy illustration in a way that caused Erickson to reasonably believe that [it was] purchasing a variable premium life insurance policy and, although the premiums were subject to change from year to year, that change would not be so exorbitant to become unsustainable or that they would be increased for an improper purpose." (Doc. 23 ¶ 90.)

According to the allegations in the SAC, Erickson discovered the "who" and "what" of its ACFA claim by no later than August 2017—that is when the first "exorbitant" premium increase is alleged to have occurred. (Doc. 23 ¶¶ 48, 50 [annualized premium increased to $208,956 in August 2017].) Indeed, Erickson concedes it "became aware of the policy increase in August of 2017." (Doc. 26 at 7.) Because Erickson did not bring its ACFA claim until September 2018, this claim is time-barred.

Erickson argues its ACFA claim did not accrue until it actually made a greatly increased premium payment in November 2018 because "[a] cause of action does not

- 8 -

accrue until damages are irrevocable." (Doc. 26 at 7, emphasis omitted.) This argument is unavailing. The cases cited by Erickson merely establish that the irrevocability of damages determines the accrual date of one particular type of claim: a claim for professional negligence. *Tullar v. Walter L. Henderson, P.C.*, 816 P.2d 234, 235-36 (Ariz. Ct. App. 1991) (finding that cause of action "for professional negligence by [plaintiffs'] real estate broker and lawyer" did not accrue until damages became irrevocable); *Amfac Distribution Corp. v. Miller*, 673 P.2d 795, 796 (Ariz. Ct. App. 1983), *approved as supplemented*, 673 P.2d 792 (Ariz. 1983) ("[A] cause of action for legal malpractice occurring in the course of litigation accrues when the plaintiff knew or should reasonably have known of the malpractice and when the plaintiff's damages are certain and not contingent upon the outcome of an appeal."); *Commercial Union Ins. Co. v. Lewis & Roca*, 902 P.2d 1354, 1358 (Ariz. Ct. App. 1995) (holding in legal malpractice action that "negligence that results in no immediate harm or damage delays accrual of the cause of action until such damage is sustained"). Unlike in a negligence case, in an ACFA case, "[a]n injury occurs when a consumer relies . . . on false or misrepresented information." *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004). A plaintiff may discover that injury before damages become irrevocable.

In sum, because the face of the SAC indicates the statute of limitations on the AFCA claim began to run in August 2017, and Erickson did not file this action until September 2018, this claim is time-barred under the one-year statute of limitations.

D. **Argument 4: The ACFA Claim Was Not Sufficiently Pleaded**

Although the AFCA claim will be dismissed because it is time-barred, the Court will proceed to evaluate Transamerica's final reason for seeking dismissal of that claim—inadequacy under Rule 9(b)—because this analysis helps inform the Court's evaluation of the negligent misrepresentation claim in Part II below.

Under the ACFA, it is unlawful for any person to use or employ "any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on

such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." A.R.S. § 44-1522(A); *Kuehn*, 91 P.3d at 351 ("To succeed on a claim of consumer fraud, a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise."). A representation is deceptive if it "ha[s] a 'tendency and capacity' to convey misleading impressions to consumers even though interpretations that would not be misleading also are possible." *Madsen v. W. Am. Mortg. Co.*, 694 P.2d 1228, 1232 (Ariz. Ct. App. 1985) (citation omitted). A "technical[ly] correct[]" representation may nonetheless be misleading—a court must consider what "is reasonably implied, not just . . . what is said." *Id.* As such, "the test is whether the least sophisticated reader would be misled." *Id.* Reliance is also a required element of an ACFA claim, but reliance need not be reasonable. *Kuehn*, 91 P.3d at 351.

As noted, Erickson's ACFA claim is premised on the allegation that the "2006 policy illustration" was misleading because it suggested the premiums would stay constant at the illustrated amounts during the life of the policy. (Doc. 23 ¶¶ 38-39, 90; Doc. 23-2.) The SAC also alleges that the premiums increased "exorbitant[ly]," including a monthly premium increase from $5,331 to $16,000 in November 2018, and "[t]hat between August 4, 2016 and August 4, 2017 the annual policy accumulation value . . . decreased from $102,338.28 to $268.52." (*Id.* ¶¶ 49, 52-53, 90.)

These allegations are sufficient under Rule 9(b). Unlike the prior iteration of the complaint, the SAC now alleges with reasonable clarity that the 2006 policy illustration was misleading because it suggested the policy was sustainable at the premium amounts used in the illustration. This is sufficient to allege the who, what, when, where, and how of the misconduct alleged.[2]

…

---

[2] In contrast, the SAC's allegations concerning other documents issued by Transamerica (*i.e.,* documents other than the 2006 policy illustration) are not sufficiently specific under Rule 9(b). Thus, were the ACFA claim not time-barred, the Court would preclude Erickson from pursuing relief under the ACFA based on documents other than the 2006 policy illustration.

II. Negligent Misrepresentation

Transamerica moves to dismiss the negligent misrepresentation claim for three reasons: (1) Erickson "expressly sues only for conduct beginning in 2015"; (2) "there was no failure to disclose"; and (3) the claim "was not pleaded with sufficient particularity to satisfy Rule 9(b)." (Doc. 24 at 15-16.)[3]

Arizona recognizes the tort of negligent misrepresentation as defined in the Restatement (Second) of Torts § 552(1) (1977), which provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Haisch v. Allstate Ins. Co.*, 5 P.3d 940, 944 (Ariz. Ct. App. 2000). "The elements of negligent misrepresentation are: (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage." *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 n.7 (Ariz. Ct. App. 2014). "Negligent misrepresentation may be by omission or nondisclosure of material facts as well as by overt misrepresentation." *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1387 n.3 (Ariz. Ct. App. 1994).

A. **Argument 1: Erickson Sues Only For Conduct Beginning In 2015**

Erickson argues the negligent misrepresentation claim should be dismissed because Erickson "expressly states [in footnote one of the SAC] that it is not suing on any pre-August 2015 conduct," yet the negligent misrepresentation claim is "based on conduct prior

---

[3] The Court notes that Arizona has a statute concerning misrepresentation and false advertising in the context of insurance policies. A.R.S. § 20-443. Although Erickson makes one brief reference to that statute in its response (Doc. 26 at 4), neither the SAC nor the response to Transamerica's motion indicate Erickson is bringing a claim under that statute.

to the purchase of the Policy." (Doc. 24 at 15.) The Court will not dismiss the negligent misrepresentation claim on this ground, for the same reasons stated in Part I.A above, but should Erickson decide to file a third amended complaint, this footnote must be removed.

B. **Argument 2: The Premium Increase Never Occurred**

Transamerica argues that, because the evidence shows Erickson "purchased the Policy knowing future premium requirements could increase substantially, there never was a 'skyrocket' increase in 2017, and [Erickson] does not allege it paid a $208,956 premium," Transamerica could not have "fail[ed] to disclose anything at the time the Policy issued about its vetting or underwriting as it relates to the sustainability of the Policy, and [Erickson] was not injured by a 2017 premium increase." (Doc. 24 at 15-16.) But again, as discussed in Part I.B above, Transamerica ignores the SAC's allegations that Erickson was forced to increase its monthly premium payment from $5,331 to $16,000 in November 2018 and that Erickson continued making the $16,000 premium payments every month thereafter. (Doc. 23 ¶¶ 49, 53-54.) Given this allegation, it does not necessarily follow that Transamerica must have made all of the necessary disclosures regarding its vetting and underwriting. The Court will, thus, decline to dismiss the negligent misrepresentation claim on this ground.

C. **Argument 3: The Negligent Misrepresentation Claim Was Not Sufficiently Pleaded**

The SAC contains various allegations related to potential false representations and omissions:

- "[T]he annual updates were misleading because Transamerica knew or had reason to know that they were not accurate illustrations of the account or cash value of the AL policies." (*Id.* ¶ 25.)
- "Transamerica never disclosed that its policy illustrations were not based on actuarially sound principals and the illustrations showed premium and COI pricing were set to be competitive, no matter how unsound." (*Id.* ¶ 31.)
- "Transamerica knew or had reason to know that it would have to raise the premiums

at a later date, at the time of the offer but did not disclose this to Erickson." (*Id.* ¶ 40.)

- There were "unsupported premiums and cash value and accumulations value number in the illustrations." (*Id.* ¶ 73.)
- Transamerica failed to "disclose[] its intent to increase the premiums by an exorbitant amount and unreasonably higher than any prospectus." (*Id.* ¶ 74.)
- "Transamerica represented and/or advertised the insurance policy, through the 2006 policy illustration in a way that caused Erickson to reasonably believe that [it was] purchasing a variable premium life insurance policy and, although the premiums were subject to change from year to year, that change would not be so exorbitant to become unsustainable or that they would be increased for an improper purpose." (*Id.* ¶ 90.)
- "[B]y offering this FL life insurance policy, Transamerica should have given fair warning that such coverage was not properly underwritten and that premiums could and would skyrocket. Instead, Transamerica either negligently or recklessly withheld important information about how risky this life insurance policy actually was." (*Id.* ¶ 105.)
- "Transamerica[] use[d] . . . prospective and in force illustrations, while knowing or having reason to know that those illustrations contained COI, cash value and accumulation estimates that were unsustainable at the time of sale." (*Id.* ¶ 106.)
- Transamerica "offer[ed] in force illustrations after the sale containing misleading COI, cash value and accumulation value estimates." (*Id.*)

As an initial matter, although an ACFA claim may be premised on literally true but misleading statements, a negligent misrepresentation claim cannot—falsity is required. *Nataros v. Fine Arts Gallery of Scottsdale, Inc.*, 612 P.2d 500, 504 (Ariz. Ct. App. 1980) ("An essential element of . . . a cause of action for negligent misrepresentation . . . is proof of the *falsity* of the representation.") (emphasis added); *KB Home Tucson, Inc.*, 340 P.3d at 412 n.7 (one element of negligent misrepresentation is "provid[ing] *false* information in

a business transaction") (emphasis added).

Given this requirement, the Court will again dismiss Erickson's negligent misrepresentation claim. As with the last iteration of the complaint, the Court is left guessing as to the what, when, where, and how of the alleged false (as opposed to true-but-misleading) representations. The SAC again vaguely refers to false representations in "annual updates" (Doc. 23 ¶ 25), "illustrations" (*id.* ¶ 73), "prospective and in force illustrations" (*id.* ¶ 106), and "in force illustrations" (*id.*). These references are not specific enough to satisfy Rule 9(b). And although Erickson attaches twelve exhibits to its SAC, Erickson doesn't specifically allege any false representations were made in any of these documents.

Erickson's omission allegations are also inadequate even under Rule 9(b)'s relaxed standard for omission claims. As noted, "a plaintiff in a fraud-by-omission suit faces a slightly more relaxed burden, due to the fraud-by-omission plaintiff's inherent inability to specify the time, place, and specific content of an omission in quite as precise a manner." *In re Banner Health Data Breach Litig.*, 2017 WL 6763548 at *7 (citation omitted). Erickson's omission allegations fail under Rule 9(b) because they fail to specify the what, when, and where of the alleged omissions. Referring generally to "policy illustrations" (Doc. 23 ¶ 31) and a "prospectus" (*id.* ¶ 74) and failing to even generally identify the documents in which "Transamerica . . . withheld important information about how risky this life insurance policy actually was" (*id.* ¶ 105) is insufficient under Rule 9(b). *Compare In re Banner Health Data Breach Litig.*, 2017 WL 6763548 at *7 (declining to dismiss negligent misrepresentation claim based on omissions where plaintiffs specifically "identified documents pertaining to Defendant's privacy practices that did not contain information about Defendant's allegedly inadequate security practices").

III. Breach Of Contract

Erickson's breach of contract claim is premised on its allegation that "Transamerica's action by increasing the [cost of insurance] is not based on the language of the policy." (Doc. 23 ¶ 113; *see also id.* ¶ 65 ["[T]he actual reason for the increase in

premium does not fall within the enumerated or express provisions of the policy."].)

Transamerica moves to dismiss the breach of contract claim on only one ground: there was no increase of premiums to $208,956 and "that premium amount was never paid." (Doc. 24 at 16.)

This argument is unavailing. As noted, the SAC alleges Erickson increased its monthly premium payment from $5,331 to $16,000 in November 2018 and continued making this monthly payment thereafter. (Doc. 23 ¶¶ 49, 53-54.) Taking these allegations as true, the SAC sufficiently alleges that the cost of insurance increased. And because Transamerica does not move to dismiss the breach of contract claim on any other ground, the Court will not dismiss it at the pleading stage.

IV. Bad Faith/Breach Of The Implied Duty Of Good Faith And Fair Dealing

Transamerica also moves to dismiss the bad faith/implied duty claim on the ground that there was no increase of premiums to $208,956 and "that premium amount was never paid." (Doc. 24 at 16.)[4] But again, the SAC alleges Erickson increased its monthly premium payment to $16,000 in November 2018 and continued making this payment. (Doc. 23 ¶¶ 49, 53-54.). Thus, the Court will not dismiss the bad faith/implied duty claim.

The Court notes that Transamerica argues for the first time in its reply that this claim also "fails because Plaintiff cites no Arizona law that a premium increase (even if it occurred) will support the claim." (Doc. 28 at 3; *see also id.* at 10 ["Even if the August 2017 increase occurred, Plaintiff cites no Arizona authority that a premium increase will support a bad faith claim, but instead relies on California and Iowa cases."].) Although this argument may have some merit, the Court will not consider new arguments raised in a reply. *AIRFX.com v. AirFX LLC*, 2012 WL 129804, *1 (D. Ariz. 2012) ("[W]e do not consider new arguments raised in a reply.").

…

…

---

[4] Erickson refers to this claim as breach of the duty of good faith and fair dealing in the SAC (Doc. 23 at 19) and as bad faith in its response (Doc. 26 at 8-10).

## V. Rescission

Transamerica moves to dismiss the rescission claim on the grounds that (1) "rescission is a remedy, not a stand-alone cause of action" and (2) the "claim fails because a contract must be rescinded within a reasonable time." (Doc. 24 at 16-17.) Transamerica is correct that rescission is not a cause of action. *See, e.g., Repwest Ins. Co. v. Praetorian Ins. Co.*, 890 F. Supp. 2d 1168, 1181 (D. Ariz. 2012) ("[R]escission is not a claim, but rather a remedy . . . ."). Thus, the Court will dismiss the rescission claim to the extent it is brought as a standalone claim but will not, at this stage of the case, express any opinion on the appropriateness of rescission as a remedy.

## VI. Amendment

"Rule 15 advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* Thus, the Court shouldn't deny leave to amend unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). "An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citation omitted).

Transamerica has not argued that it would be prejudiced by Erickson amending any of its claims. Thus, the Court will only consider futility. On the one hand, the Court will deny leave to amend the ACFA and rescission claims because they fail as a matter of law. On the other hand, because there may be a set of facts under which Erickson can sufficiently plead a negligent misrepresentation claim, the Court will allow Erickson to amend this claim.

Accordingly, **IT IS ORDERED** that:

(1) Transamerica's motion to dismiss the SAC (Doc. 24) is **granted in part** and **denied in part**;

(2) Erickson's ACFA and rescission claims are **dismissed with prejudice**;

(3) Erickson's negligent misrepresentation claim is **dismissed without prejudice**; and

(4) Erickson shall have **14 days** from the date this Order was issued to file a third amended complaint in accordance with this Order and the local and federal rules.

Dated this 25th day of September, 2019.

_____
Dominic W. Lanza
United States District Judge